Next case this morning is Calvary Albuquerque v. Blinken, No. 24-2066. Council, you may proceed. Thank you, Your Honor. May it please the Court. My name is Olsi Vrapi, and I represent Calvary of Albuquerque. And with me today is Julia Jago, joining me at Council table. This case is about one thing, calling explicitly permitted religious activities unauthorized employment. There are two main issues in the case, whether Calvary made a prima facie RFRA claim, a Religious Freedom and Restoration Act claim, in showing that this denial is substantially burdening both its choice of minister right and also compensating said ministers, and number two, whether RFRA pierces the veil of the doctrine of constant non-reviewability. On the first issue, the district — Don't you have to get past the second issue before we get to the first issue? We can address that, Your Honor. That's not a problem. We can jump straight to the second issue. I address that first because that would be sort of a threshold claim, because if there was no RFRA claim, then there would not be exceptions to the doctrine. But to answer the court's question, RFRA was meant to be a very broad and very intrusive statute. On the other hand, the doctrine of constant non-reviewability is a judicially graded doctrine where the courts choose to stay out of visa disputes or admission disputes. So in this — but there are exceptions to the doctrine of constant non-reviewability. One of them, the first one, is on the text of the doctrine itself, which was reiterated as late as Munoz last year in the Supreme Court case in Munoz, which is otherwise — unless otherwise expressly authorized by law. And the seminal case in this is Meacham v. Foster, a Supreme Court case from 1972, which the parallels between Meacham and the case at hand are uncanny, because in Meacham, the Supreme Court dealt with anti-injunction statute from 1793, which also provides an absolute bar to injunctions against state courts or state action, with certain exceptions. And in this case, we have the doctrine of constant non-reviewability that's been around for over 100 years, that is also an absolute ban on review of visa decisions, with, again, exceptions. And both of those, both the anti-injunction statute and the doctrine, had the same exact text built in — exception built into the text of the law itself, which is otherwise expressly authorized by law. And so in this case, in Meacham, we had Section 1983, which is very broad and intrusive in a sense, that's supposed to be sort of like the guardian between violations of constitutional rights. The federal court is between government and the people in terms of violation of constitutional rights. And in this case, we have RFRA, which protects the First Amendment right, protects the right to religious expression. And so those cases are — Meacham is just uncannily parallel to the case at hand. It's interesting you didn't cite it in your opening brief. That is true, Your Honor. That was in our reply brief. In response to the government's argument that RFRA does not provide an express authorization. Our argument originally was that RFRA is the exception to the law, but they made issue out of that there's no citation, if you will, to the doctrine of constant reviewability, how RFRA doesn't trump because of no citation. And Meacham says, you don't need a citation. You don't need a reference to the other statute. But don't you need something more expressed than what we see in RFRA? I don't believe so, Your Honor. I mean, RFRA just has this blanket statement about federal law. It's pretty sweeping. And I thought that the expressly authorized, wouldn't that require more than that? And that was the exact question in Meacham, Your Honor. And the Supreme Court did not think that it needed more than that. Because we dealt with Section 1983, which is also very broad and general in scope. It wasn't necessarily directed at the federal anti-injection statute. Well, but didn't we say in one of our cases that it doesn't apply to qualified immunity? So there are some cases where RFRA has been held to not necessarily apply. But those have shaped relief, not cut out relief altogether, like was the case here. Because then otherwise, RFRA would lose its meaning when there's zero relief in a case like this. Well, if someone has qualified immunity, that cuts off relief. That is true. So I believe the Court's referring to the case in Ajaj, right? Correct, correct. Which interpreted Tanvir, I believe. So RFRA provides for review and appropriate relief, not unfettered right to win. So review goes to rules and procedures. For example, one, and as Mr. Goldsmith pointed out, you know, like you can't, there are certain things. Like you can't just blow a deadline and claim I still win under RFRA, even though you're not following the rules of how claims are supposed to proceed. But Ajaj talked about background presumptions and that RFRA is context dependent and following Tenzin. And all of those to say that there are rules and procedures that need to be followed and that RFRA can still provide appropriate relief. So in that case, the reason why RFRA was not allowed to proceed was because this, I believe it was Section 1983 as well, that there was a comment in the RFRA during enactment that it said that it wasn't meant to replace Section 1983 relief. And so in that case, they said it follows under the same background presumption that Section 1983 had prior to the RFRA's enactment. So that was a very specific, very niche, narrow area that was being addressed there. Counsel, do I have it right that, well, first of all, there's just not a lot of law in this question is my understanding. That's correct. Certainly there's no Supreme Court or other circuits that have held that RFRA can pierce the doctrine of consular non-reviewability. Is that right? Specifically to RFRA, that is correct, Your Honor. There are only two district court cases, Ashby and Kadar from North Carolina and New York. But both of those cases essentially said that, well, RFRA sort of dismissed it offhand without any analysis, saying, well, RFRA is statutory, so it just doesn't apply. But that's not the case in the 10th where RFRA rights are considered as constitutional rights. Okay, so if this case is somewhat of a case of first impression, that makes me also think about limiting principles. And in your opening brief, you said that the metaphorical floodgates would not be opened because if we were to hold that RFRA can pierce this doctrine, that it would be relatively narrow and limited to the R1 visa program. But I'm not sure I understand why that would be true. If we were to hold that RFRA can be applied to review decisions made by U.S. consular officers overseas, why couldn't claimants beyond the R1 visa program be able to bring RFRA claims? If they were able to articulate a sincere exercise of religion that is being substantially burdened, then they should get review as well. I mean, maybe I just have a very vivid imagination, but I can imagine that's true. I mean, why wouldn't, whether it be any type of church of any faith or individuals who would, you know, have rights to claim and bring on behalf of others who are overseas trying to get to the United States, why couldn't they say this is a deeply or sincerely held religious belief? It's a central tenet of my faith. Therefore, my RFRA rights get to supersede or take the place of these decisions that consular officers are making that are enforcing State Department policy. If they can articulate a prima facie case under RFRA, they should get review. But the reason why this isn't the floodgates is because if this religious right is sort of like so far-fetched, kind of saying, well, I have a religious right to live with my foreign spouse in the U.S., then they wouldn't get past Munoz because Munoz essentially said that you can have a religious right to be married or rights to marriage, but not a right to live in the United States. It would be hard to articulate a religious right in those types of circumstances. But in this case, it's very clear, very direct. And if the court wants to limit the holding and just saying that based on the particular facts of this case, because the denial in this case was strictly directly to the religious rights. This wasn't just some random denial that he had a crime or whatever, that he wasn't being allowed into the country. The reason why he was denied was simply because he received a payment for the religious work that he was doing in the U.S. during that time. Do you agree that receiving that honorarium from the church violated the terms of his B-1, B-2 visa? I do not agree, Your Honor, and neither does the Foreign Affairs Manual, which explicitly permits payment of honorariums or allowances to religious workers who are here on a B-1, B-2 visa. I don't want you to spend too much time on this, but I was just curious about your characterization of RFRA as a super statute. Are there any other super statutes? I don't know, but RFRA certainly is. Justice Gorsuch said that. Well, I'm not going to take issue with him right this moment, but I am interested in whether there are any other super statutes out there. I am not a – I don't know, Your Honor. I haven't really done a survey or to think that, but in a certain way, the Supreme Court in Meacham considered 1983 to be a – didn't call it a super statute, but sort of like super enough to provide express authorization. I don't want to take up more of your time. That's fine. Right. So, very briefly, Your Honor, there are two other exceptions to the doctrine of constant and reviewability, the facially legitimate and bona fide. And in this case, the Tenth Circuit law in Mark Chalk v. Green says that the consular officer needs to provide both a legal basis and a factual – and some factual basis for that, and zero facts were provided. Consular officer, as the government has conceded, are the only ones that can make factual determinations, and none were made in this case. On that issue, I was curious about the failure to overcome the presumption of immigrant intent as one of the facially legitimate reasons. And you don't do much with that ground here, and I'm wondering why not. The reason is because, Your Honor, the consular decision which stands, which is the subject of the case today, did not use that as a ground for denial. This was in a previous consular application that that was used, but in the last one that is the subject of the case today, that was not used as a ground for denial, and the presumption is that that was overcome at the second consular interview. And the district court actually acknowledged that and acknowledged that there's not enough facts in the record to go into that issue, so the presumption was that the only ground for denial is the fraud and misrepresentation. And is that consistent with the legal net opinion of what you just said? The legal net opinion is irrelevant in this case, Your Honor, because as defendants have, as the government has conceded, the consular officer is the only person that can make factual and legal determinations, make a decision on the visa. Even the Secretary of State himself, which was dismissed in this lawsuit for that argument, cannot make that sort of determination. So anything that anybody else said is irrelevant. I would like to, I was hoping to reserve a couple minutes for rebuttal, but very briefly I want to address the prima facie claim. Because in this case the court said that, well, they can just hire anybody else, and so that's not a substantial burden. Well, that goes against decades of Supreme Court law that says that the government cannot, should not get in between the relationship between church and minister. And just saying that they can hire somebody else, this is not just a regular employment decision. This would be the same as the Sacred College of the Cardinals picking a pope and the government saying, sorry, you can't have that one, pick another one. And that's not substantial burdening. On the other hand, on the issue of pay, the district court also erred in the sense that there was, it said that it doesn't change Calvary's compensation practices, this decision. This absolutely changes Calvary's practices because Calvary now is between a rock and a hard place by deciding if I have an itinerant minister coming on a B1, B2 in the first 90 days of their visit, I either have to pay them in accordance with my religious belief and violate the law, or not pay them and obey the law but violate my religious beliefs. And so this absolutely changes their practices and substantially pressures them to change their practices. But it's not violating, the church isn't violating the law. It's the visiting minister who's violating the terms of his visa. Isn't that different significance? I don't believe so, Your Honor, because the church by this decision tells Calvary that if they pay somebody as an itinerant minister that's a foreign national, they are doing something that is unlawful. The consequences are paid by the foreign minister, but Calvary is also breaking the law according to this decision. If there's no further questions, I'd like to save my last 22 seconds for rebuttal. You can have it. Thank you, counsel. Your Honor, may I please the court? Aaron Goldsmith on behalf of the government. This case involves an appeal by a single party raising a single claim. This court should affirm the decision of the district court because the district court correctly dismissed Calvary Church's RFRA claim for two reasons. First, as a threshold matter, Calvary Church failed to state a claim because RFRA does not expressly authorize judicial review of the refusal of a visa. And second, Calvary failed to state a claim under RFRA because it failed to allege facts demonstrating a substantial burden. That is an actual incompatibility between Calvary Church's belief and the counselor officer's refusal. To be clear, there is no constitutional claim raised in this case. I understand in considering RFRA, courts often look at it by analogy to other areas of law, but RFRA is distinct from a constitutional claim. They are not the same thing, and I would respectfully invite the court, if they have concerns about that, to look at the Hobby Lobby decision, page 2671, where they talk about how it's just a separate cause of action. Now, with respect to counselor... Counselor, could I just, on whether there's a constitutional... I'm not going to ask you about RFRA in this respect, but I want to ask you about the doctrine of counselor non-reviewability because there's reference to it having this long lineage, judicial created but also tied to separation of powers. Now, how much is the doctrine constitutionally based, and if it is, how does that factor into whether it applies here? Well, it is grounded in the separation of powers, and the Supreme Court said as much in Munoz. It also said that the admission or exclusion of a foreign national is a fundamental sovereign attribute, but that doesn't mean that any challenge, any cause of action is constitutional. You look at the complaint to see whether they're raising a statutory or constitutional claim, and here they're raising a statutory claim. I understand that. I'm just wondering if that factor is relevant to the issue of whether RFRA overcomes the doctrine of counselor reviewability. I know that the argument between the parties has to do with whether it expressly authorizes judicial review, but in thinking about that, does it matter that there's some constitutional foundation for the doctrine? Yes, the fact that it's grounded in separation of powers weighs against the finding that RFRA creates or supersedes this longstanding doctrine. I guess the counter to that is that this is really a matter of statutory interpretation of RFRA in that it does refer to all federal law, whether statutory or otherwise, and then the question is, well, does that expressly authorize judicial review in this situation? And if I'm understanding the back and forth here, the government's position is it's got to be more specific to the doctrine to apply, and I think Calvary is saying, well, wait a minute. It says all federal law, statutory or otherwise, And so the question I pose to you is why couldn't Congress make a blanket authorization, an express blanket authorization in RFRA? I understand your concerns, and I would respond by saying we're not writing on a blank slate. You mentioned a few moments ago the Ajav decision, and I think that is particularly instructive because this Court looked to the phrase applies to all federal law, and it said it doesn't mean RFRA overrides all federal doctrines or defenses. Right? You look. There was no basis for inferring that. There they had a long-established, judicially created doctrine of qualified immunity. So they looked at the background legal environment. Correct. And in 1953, didn't the Supreme Court specifically say that consular non-reviewability can be overridden when expressly authorized by law? That was not the case in Ajav or any of the other cases that you cited. Okay. But, Your Honor, if you look at, and we've had a long bullet point of the cases, and they were just And in none of those situations, because I read every single one of them, in none of those situations, including qualified immunity, was there an express, to borrow a previous advocate's phrase, carve-out when review is expressly authorized by law? Certainly wasn't the case for qualified immunity in Ajav. Can you identify any of those examples where there was a carve-out when review was expressly authorized by law? No. But those cases are significant because they are examples of dogs that did not bark. In none of those cases did the court say, okay, we need to consider RFRA and the applies to all federal law in terms of determining whether a latch is applicable. And, in fact, this Court's decision in Iglesia Pentecostal, in a footnote, there was analysis of the waiver and forfeiture doctrine. And, again, the court did not say, before we apply waiver, we have to look and determine whether it's different because it's RFRA. Yeah, if they hadn't argued RFRA in district court and they came here, I don't think anybody in the room would say, well, they, you know, RFRA says that that supersedes forfeiture or waiver. So your point is well taken. But with regard to your dogs don't bark argument, how do we get around just reading two sentences? RFRA applies, as Judge Matheson said, to all federal law, whether statutory or otherwise. Consular non-reviewability can be overridden when expressly authorized by law. So what circumstances would there be in which RFRA would do what it purports to do in BB-3? In other words, to apply to other federal laws, whether statutory or otherwise. Right. Can you give me an example? So RFRA says a little bit more. It talks about appropriate relief but doesn't define the appropriate relief. And what this Court has said is you have to look at the context. You have to look at what was Congress intending, what were they inferring in the statute. And so I understand RFRA is somewhat unique. But here there is simply no basis for inferring that Congress, using that language that you just quoted, intended to create an exception to this long-established argument. I thought you already made that argument when you pointed out in a judge we look at the background legal environment. And the background legal environment in 1993 had expressly recognized that there is an exception for consular non-reviewability when review is expressly authorized by law. And so I don't know how you fit. I know what you're trying to use adjudge to your benefit. I don't know how I can credit your argument in light of adjudge because of its recognition that we look at background legal environments. And that was well settled in 1993. But express has to mean something more given the context of this important doctrine and the fundamental attribute of sovereignty involving the admission or exclusion of foreign nationals. How do you respond to your, and I'll ask you this question and I'll shut up, how do you respond to your adversary's argument that that's exactly what Mitchell v. Foster did? Well, I don't read it that decision as saying that since 1972 any time you use the word express that means express or implied. I think that No, I think that they made the argument that under Mitchell. I just want to clarify my question. Right. I'm going to let you answer it. But I think their argument is that no, in Mitchell they specifically addressed what expressly authorized by law means and that the statute to override the doctrine doesn't have to expressly refer to that doctrine. That's what I'm trying to answer. Right. And I understand your concern. I would say in response that that was a particular statute that goes back to the dawn of the republic, the anti-injunction, and that there had been a long history given the federalism concerns of reading exceptions into the statute even where none existed. And then particularly, for example, I think there was a bankruptcy law. There was an exception even though the statute at the time didn't, the version of the anti-injunction statute that existed at the time didn't create that exception. And so the court there was not writing on a blank slate. They made the point in Mitchell that if we were to rule otherwise we would have to overrule our prior case law, particularly younger doctrine that had just been decided. So I think that's a little bit different than the situation what we have here. And I would like to make a couple quick points in response to things that were said. There was a contention that the legal net opinion is irrelevant. It was attached to the complaint as Exhibit 1. It is incorporated by reference. It sets forth what the consular officer actually decided. And I think it's highly relevant. There was a specific finding that the beneficiary, Mr. Green, made a material misrepresentation under Section C1. And it just expressly says there was a material misrepresentation. And that was the basis for the consular officer's decision. Congress committed those types of discretionary determinations to the consular officer. Here, the consular officer made a determination as to the mental intent of the beneficiary. And just to be clear, under the facts, even as alleged, you're talking about someone coming at the beginning of April, April 9, 2022, 14 days later, the Calvary Church is petitioning on their behalf to employ them as a worship director, and afterwards they're put on payroll. That under those facts, a consular officer could conclude that Mr. Green misrepresented the purpose of his trip, that he wasn't coming here, for example, as a tourist. He was coming here to be employed, employed for hire. And that's not permitted under 22 CFR 4131B1, which says that the – I'm sorry. Can I ask, though, your opposing counsel, I asked the question about whether they agreed that Mr. Green violated the terms of the B1, B2 visa. Not only did they not agree and concede that, they also said that the State Department, I can't remember, some regulation in the State Department says that honoraria are able to be paid. So how do I square that with what you're just mentioning here about the consular officer's fact-finding? Because what's controlling is the statute and the regulations. And what the statute defines what honorarium is under 1182 subsection P and Q. And under – and they've said we paid honorarium. But based on their allegations, it doesn't match up with the legal definition that Congress created. What controls is what Congress set forth in the statute. And it simply doesn't meet the legal definition. Well, so is there a conflict or tension between the statute and the State Department regulation?  And let me explain why. What is always controlling is the statute and regulations. Could I interject? This is the Foreign Affairs Manual that they're talking about.  Is that the regulation? No, no. Okay. But is it in conflict with the regulations? No, Your Honor. What it is, it's like an owner's manual. It's an explanation for consular officers, who are often not attorneys, explaining what the statute and what the regulations require. And it sets forth – you know, they're required to deny a visa if they find – and Congress has required this – if they find there was a material misrepresentation. Since there's no device that allows you to read someone's mind, you necessarily have to determine mental intent based on the facts before it. And it has this so-called 90-day rule, where it says if you've come here on a visa, and within 90 days you do something inconsistent with that, you can find intent. That doesn't mean once you get to 91 days, you can ignore the binding regulations. It doesn't mean if you violate it within 90 days, you've necessarily made a misrepresentation. But it's just an explanation to someone who's not necessarily a lawyer as to how you find intent. And here, under even their facts, there was – I see my time is about to expire. If I could just finish this thought. There was a reasonable basis for finding the intent to make a misrepresentation. That was the basis for the finding as set forward in Exhibit 1. But we don't even get there, because the doctrine of consular nonviability bars judicial review. And on that basis, this Court should affirm the decision of the district court dismissing under Rule 12b-6. Thank you, counsel. In 20 seconds. Number one, first of all, the FAM, the Foreign Affairs Manual, allows both honoraria and allowances. And the definition that Mr. Goldsmith was talking about in the statute is only about honorariums and not allowances. Second, even if he engaged in unauthorized employment, so what? They still get review. Because that unauthorized employment does not translate to fraud. And it has been made clear in this case that this was a presumption of unauthorized – presumption of fraud, not actual fraud. I don't see I'm out of time. Did you have a three? I do. Well, it sounded like you did. Why don't you do one more? All right. I will do one more. Has the judge ever told you that? No. And I appreciate the indulgence, Judge Matheson. And the last point was the constitutional right versus a statutory right. The district court got that right. The district court followed Tenth Circuit precedent that said RFRA equals the constitutional right in the Tenth Circuit. And that's why it followed the entire analysis through the Mandel exception and the bad faith exception. And so in this case, it's not – I don't even know why that's an issue that was not raised as an error and it was not appealed by the government. So the bottom line is it comes down to the consular officer denying a visa and saying that religious work, permitted religious work, was unauthorized employment and extrapolated that to a presumption of fraud. And this substantially burdens Calvary's rights and they are entitled to review. Thank you. I thank you for your time. Thank you, counsel. It always seems there's at least three points. Thank you both for your arguments this morning. It's a very interesting case and we will take it as submitted and counsel are excused.